In the Matter of the Trust Estate of Erastus C. Collins.—No. 39368.—190 S. W. (2d) 259.

Division One, November 5, 1945.

*H. E. Sheppard, Elmer E. Hall* and *Wm. G. Boatright* for appellant.

616

*C. A. Calvird* and *Crouch & Crouch* for respondents.

BRADLEY, C.—On petition of the trustor, Erastus C. Collins, filed June 8, 1944, the circuit court of Henry County, on same day petition was filed, appointed Thornton Jennings successor trustee

of the trust created by Collins. I. E. Gaskill claimed that he was trustee and on September 6, 1944, filed motion to set aside the appointment of Jennings; the motion was overruled and Gaskill appealed. Jurisdiction of the appeal is in the supreme court because the construction of the due process clause of the Constitution is involved. See Art. 6, Sec. 12, Const. 1875, Amendment of 1884, Art. 5, Sec. 3, Const. 1945.

May 3, 1921, Collins was indebted to the Brinkerhoff-Faris Trust and Savings Company, the Bank of Ladue, and others. Both banks were in Henry County, and the debt owing to the Bank of Ladue had been reduced to judgment. On said date, Collins, his wife joining, executed the trust instrument termed a "deed in trust", by which he conveyed to the Brinkerhoff-Faris Trust and Savings Company, for the benefit of his creditors, his life estate in 240 acres of land in Henry County, and a $5,000 insurance policy on his life. The Brinkerhoff-Faris Trust and Savings Company, as trustee, was to manage the land, collect the rents, retain 5% for its services, pay from the income all expenses, such as repairs, fire insurance, taxes, etc., including $180 annual premium on the life insurance policy. The net amount remaining each year was to be paid to the Bank of Ladue until it was paid in full, then the net was to be applied on the debt owed to the Brinkerhoff-Faris Trust and Savings Company, hereinafter generally referred to as the Bank. After the two banks were paid in full the net was to be applied to any other debt owed by Collins prior to the date the Bank of Ladue filed its suit against Collins, provided such debts were presented to the Bank within 6 months from May 3, 1921, and proved to be just. When all debts were paid the Bank was to quitclaim the land back to Collins and return the life insurance policy. As to a successor trustee the trust instrument provided:

"Should trustee resign this trust or for any reason not exercise same the circuit court of Henry Co., Mo., shall be empowered to appoint a successor in trust in whom title to said land shall vest under this deed on same trusts as above set forth."

The Bank functioned as trustee until it failed in February, 1933, and was taken over by the State Finance Commissioner, W. W. Johnson, special deputy in charge. The Finance Commissioner, through his deputy, Johnson, assuming that such was proper, took over the duties of the trustee under the trust instrument and so functioned until February 16, 1939, at which time Gaskill took over the duties of trustee. Gaskill purchased the remaining assets of the Bank and he took over as trustee on the theory that, in the court order directing the Commissioner to convey to him the remaining assets, he was appointed trustee. Gaskill functioned as trustee until Jennings was appointed. Collins, in his petition for appointment of a trustee, proceeded on the theory that when the Bank failed and was taken over by the State Finance Commissioner in February, 1933, the trusteeship

under the trust instrument became vacant and so remained until Jennings was appointed. No notice of Collins' petition for appointment of a successor trustee was served on Gaskill and for such failure, he claims he was denied due process.

When the Bank failed in February, 1933, Judge Burney was the regular judge of the circuit court of Henry County. His term expired on the first Monday in January, 1935. He was a depositor of the Bank and on March 30, 1933, made an order, in the liquidation proceedings of the Bank, disqualifying himself to sit in said proceedings. On the same day Judge Burney called in Judge Bruce, the regular judge of an adjoining circuit, "to act as special judge" in the liquidation proceedings, and on the same day Judge Bruce appeared and assumed "all jurisdiction" in the cause. Judge Burney, on the first Monday in January, 1935, was succeeded by Judge Calvird, but Judge Bruce continued to function as special judge in the liquidation proceedings of the Bank until the matter was finally closed June 16, 1939.

Gaskill contends, as stated, that Judge Bruce, in the order directing the conveyance to him of the remaining assets, *appointed* him trustee of the trust instrument and that there was no vacancy when Jennings was appointed. Collins contends: (1) That Judge Burney had no authority to call in Judge Bruce; (2) that Judge Bruce did not have jurisdiction of the liquidation proceedings; (3) that after Judge Burney's term expired on the first Monday in January, 1935, and he was succeeded by Judge Calvird, who became the regular judge of the circuit court of Henry County, Judge Bruce, in no event, could have had authority to appoint a successor trustee of the trust instrument; and (4) that Judge Bruce, even assuming he had authority to do so, did not, in fact, *appoint* Gaskill trustee of the trust instrument.

 The liquidation proceedings of the Bank were civil proceedings and Judge Burney, therefore, had no authority for calling in Judge Bruce. Sec. 1059, R. S. 1939; State ex rel. Dunlap v. Higbee, 328 Mo. 1066, 43 S. W. (2d) 825, 1. c. 826, but Gaskill contends that, in any event, Judge Bruce was a de facto judge, functioned under color of right, and that his acts as judge in the Bank's liquidation were valid. State ex rel. McGaughey v. Grayston, 349 Mo. 700, 163 S. W. (2d) 335, is cited as supporting such contention. However, the question of Judge Bruce's right and authority to sit in the liquidation proceedings is not important here.

 Gaskill bottoms his case on the proposition that he was the duly *appointed* trustee when Jennings was appointed. If such is so, then he was entitled to reasonable notice of any proceeding that might affect his tenure as trustee. And if Gaskill was trustee when Jennings was appointed, then Jennings' appointment should be set aside. When the Bank became insolvent and was taken over by the State Finance Commissioner its trusteeship under the trust instrument terminated

and the office of trustee became vacant. State ex rel. Banister v. Cantley, 330 Mo. 943, 52 S. W. (2d) 397; In re Strasser, 220 Iowa, 194, 262 N. W. 137, 102 A. L. R. 117 and note. Gaskill, in effect, so concedes. Gaskill contends that his appointment as trustee was made by Judge Bruce, while sitting as the judge of the circuit court of Henry County in the liquidation proceedings, and that such was a compliance with the trust instrument provision that a successor trustee was to be appointed by *the circuit court of Henry County.* And Gaskill says that the language of the deed of conveyance to him by the Commissioner confirms the notion that Judge Bruce actually made such appointment.

As stated, Judge Bruce, on February 16, 1939, sitting in the Bank liquidation proceedings, made the order directing the Commissioner to convey the remaining assets to Gaskill. The order recites that the Commissioner, by his deputy, advised the court that, among the assets of the Bank, there was a certain "deed in trust", having reference to the trust instrument executed by Collins. The order goes on to describe the trust instrument, its purpose, etc., recites that on October 29, 1938, the court approved the sale of the remaining assets of the Bank to Gaskill and that the beneficial interest of the Bank in the trust instrument is one of the remaining assets, and that Gaskill was entitled to have transferred to him "all the right, title and interest" of the Bank in the real estate described in the trust instrument. And the Commissioner was ordered to make such transfer. The order concluded as follows: *"It is further ordered, adjudged and decreed that the said I. E. Gaskill shall be and is fully vested with all the rights and powers hereinbefore vested in the Brinkerhoff-Faris Trust & Savings Company under and by virtue of the said deed in trust"* (italics ours).

Pursuant to the order of February 16, 1939, the Commissioner, on May 26, 1939, made the transfer of the remaining assets to Gaskill in an instrument termed a "commissioner's deed." The deed recited that it was executed pursuant to the order of February 16, 1939, and that such order authorized the Commissioner to transfer to Gaskill *"all the beneficial interest"* of the Bank in the trust instrument. The deed described the land, etc. and conveyed all the beneficial interest of the Bank therein to Gaskill. Nothing is said in the *premises* of the deed about a *trustee*, but in the *habendum* such is mentioned The habendum follows: "To have and to hold the same (the beneficial interest of the Bank in the land) with all the rights, immunities, privileges, and appurtenances thereto belonging unto the said I. E. Gaskill, and his heirs and assigns forever, *as successor to and entitled to all the rights as trustee* or beneficiary formerly vested in said Brinkerhoff-Faris Trust & Savings Company" (italics ours). Gaskill relies on the italicized portion of the order directing the conveyance of the

remaining assets to him to support his contention that he was actually appointed trustee. And, as stated, he says that the italicized portion of the deed confirms his contention.

Two questions are presented. First, assuming that Judge Bruce had authority. to appoint a successor trustee, was Gaskill actually appointed? and second, if Judge Bruce did appoint Gaskill successor trustee, was the appointment void ab. initio on the ground that Judge Bruce did not have authority to appoint?

Gaskill purchased the remaining assets only. There is no contention that he *purchased* the trusteeship, and no contention that such was legally possible. So far as appears Gaskill filed no petition asking to be appointed trustee and made no request of any kind to be so appointed. The court order, by its terms, vested in Gaskill all the *rights and powers* theretofore vested in the Bank by virtue of the trust instrument. By virtue of his purchase of the remaining assets Gaskill was entitled to all the beneficial interest that the Bank had under the trust instrument and all the *rights and powers* that the Bank as *beneficiary* had, and such was all that he was entitled to by virtue of his purchase. In order to construe the court order to mean that Gaskill was thereby appointed trustee, it will, we think, be conceded that such construction must be derived from the words *rights* and *powers*, and since the court, in the order, was directing the Commissioner to convey to Gaskill that *interest* in the trust which he purchased, namely the *beneficial* interest, the common sense of the thing is that the words *rights* and *powers* should have reference only to the rights and powers of the Bank as *beneficiary*.

In the deed upon which Gaskill relies as confirmatory of his contention that he was appointed trustee, the language is more to the point, but it is not claimed that Gaskill could be appointed trustee by the deed of the Commissioner. And we might say that the *habendum* of the deed has reference to what was *conveyed* in the *premises*, and no reference was made to a trustee in the premises of the deed. "So unimportant is the habendum that if it is repugnant to the limitations appearing in the premises it will have no effect; an absolutely repugnant habendum always yields to the terms of the premises." McCune Gill's Tiedeman On Real Property, Sec. 609. One of the cardinal rules for determining the meaning of a contract and the intention of the parties is to consider the contract as a whole. Thomas v. Utilities Bldg. Corp., 335 Mo. 900, 74 S. W. (2d) 578. Applying the principle of that rule, we think it would be unreasonable to say that Judge Bruce *intended* to appoint Gaskill trustee or that he did so appoint him in the court order relied upon.

We rule that Gaskill was not appointed trustee by Judge Bruce, and since we reach such conclusion it will not be necessary to rule the

622

question on Judge Bruce's authority to appoint a trustee. The judgment should be affirmed and it is so ordered. *Dalton* and *Van Osdol, CC.,* concur.

PER CURIAM:—The foregoing opinion by BRADLEY, C., is adopted as the opinion of the court. All the judges concur.